105 So.2d 502 (1958)
Idalia PIVIDAL, Appellant,
v.
CITY OF MIAMI, Florida, a municipal corporation, and Miami Transit Co., a Florida corporation, Appellees.
No. 57-162.
District Court of Appeal of Florida. Third District.
July 7, 1958.
Rehearing Denied October 24, 1958.
*503 Gustave W. Larson, Miami, for appellant.
William L. Pallot, City Atty., and Douglas R. Gardner, Asst. City Atty., Miami, for appellee, City of Miami.
Blackwell, Walker & Gray, Miami, for appellee, Miami Transit Co.
PEARSON, Judge.
The plaintiff prosecutes this appeal from a summary final judgment for the defendants. The appellant filed her complaint for damages upon injuries allegedly caused by: (1) the negligence of the defendant, City of Miami, in failing to properly maintain a portion of the city street where plaintiff fell, upon alighting from a bus, and (2) the negligence of the defendant, Miami Transit Co., in failing to stop its bus at a safe place for her to alight from the bus. The respective defendants filed their answers which denied the allegations of the complaint and affirmatively alleged that the accident was caused by the contributory negligence of the appellant. At the pre-trial conference, the court entered the summary final judgment for both defendants. The minutes of the pre-trial conference contain the following announcement by the court:
"I am frank to say that I do not see liability in the case. The photographs, themselves, reflect the condition which, to my mind, is not a dangerous condition.
"It is one that obviously exists, if this is a dangerous place, for a bus to stop, there are literally thousands of such places in this City that I see every day.
"Now, furthermore it seems to me that a passenger alighting from the bus, in broad daylight, at this point, in the exercise of any degree of care whatever for his or her own safety, would not be endangered by this condition."
The photographs submitted showed that the edge of the paved roadway, where the passenger disembarked, was uneven and there was a slight drop off at the road's edge. The part immediately adjacent to the edge was a hard sandy covered surface with numerous small stones on the top of the sand. Counsel for the plaintiff introduced the photographs and both counsel for the city and bus company agreed the photographs reflected the conditions existing at the time of the accident and agreed to their introduction in evidence at the trial.
The Florida Supreme Court has held that a bus company owes the same high degree of care to passengers when entering or leaving the vehicle as when being transported therein. Atlantic Greyhound Lines v. Lovett, 134 Fla. 505, 184 So. 133, 136.
Thus it was stated in Tampa Electric Co. v. Fleischaker, 152 Fla. 701, 12 So.2d 901, 905, quoting 3 Sherman and Redfield, Negligence, 1319-1321 (rev. ed.), "The obligation of a carrier to assist passengers in getting on and off depends largely upon the nature of his vehicle, the facility with which access may be had without assistance, and similar circumstances.
"The duty to assist, or warn, or guide and protect, not in itself a direct duty, may arise from the unusual conditions created by the place of stoppage, which place is not in itself the violation of a direct duty." See also annotation on "Liability of motorbus carrier to passenger injured through fall while alighting from vehicle", 9 A.L.R.2d 938, 946.
Of course, "[a] corollary of the rule that carriers are held to the highest degree *504 of care for the safety of passengers is that `"passengers should use ordinary care to protect themselves in getting on or off trains, when safe and suitable means of boarding or alighting from trains are provided."'" Jacksonville Coach Co. v. Early, Fla. 1955, 78 So.2d 369, 371.
As to the liability of a municipality for defects in its streets the general rule prevailing in Florida is "while a city is not an insurer of the motorist or the pedestrian who travels its streets and sidewalks, City of St. Petersburg v. Roach, 148 Fla. 316, 4 So.2d 367, it is responsible, of course, for damages resulting from defects which have been in existence so long that they could have been discovered by the exercise of reasonable care, and repaired." City of Jacksonville v. Foster, Fla. 1949, 41 So.2d 548, 549; Mullis v. City of Miami, Fla. 1952, 60 So.2d 174, 176.
The controlling question, therefore, is do the admissions made at the pre-trial conference and the photographs admitted, so conclusively show contributory negligence as a matter of law that there is no need for a trial? Inasmuch as a summary final judgment for the defendant in a negligence action is in essence a directed verdict for the defendant before trial, we must view the facts in the light most favorable to the plaintiff and grant to the plaintiff all reasonable inferences from the facts before the court.
A careful review of the record reveals no material admission, other than the photographs, upon which a finding of contributory negligence as a matter of law could be made. Photographs may be used as a basis for a summary judgment but if reasonable men might justifiably make different inferences and deductions and reach different conclusions from certain photographs, then it is the province of the jury to make such deductions and inferences. Bess v. 17545 Collins Avenue Inc., Fla. 1957, 98 So.2d 490. In the case now before us the depth and extent of the alleged defect in the roadway is difficult to determine from the photographs in evidence. Based upon the reasoning set forth in the last cited case the summary judgment must be reversed.
Reversed and remanded.
CARROLL, CHAS., C.J., and HORTON, J., concur.